**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION**

| | |
|---|---|
| KATHLEEN MARY SANGINARIO,<br><br>Plaintiff,<br><br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, JPMORGAN CHASE BANK, N.A., COMENITY BANK,<br><br>Defendants. | **Case No.: 1:26-cv-05692**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, as and for its complaint in this matter, alleges, based upon Plaintiff's personal knowledge, upon information and belief, and upon the investigation of counsel, as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3. Venue is proper in this District under 28 U.S.C. §1391(b)(2).

## PARTIES

4. Plaintiff Kathleen Mary Sanginario ("Plaintiff") resides in Howard Beach, New York, and qualifies as a "consumer" as defined and protected by the FCRA.

5. Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting

agency with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

6. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency with a principal place of business located at 475 Anton Boulevard Costa Mesa, California.

7. Defendant Trans Union LLC ("Trans Union") is a consumer reporting agency with a principal place of business located at 2 Baldwin Place, Chester, PA 19022.

8. Defendant JPMorgan Chase Bank, N.A. ("JPMCB") is a financial institution and "furnisher" of credit information that maintains its principal place of business at 1111 Polaris Parkway, Columbus, Ohio 43240.

9. Defendant Comenity Bank ("Comenity") is a financial institution and "furnisher" of credit information that maintains its principal place of business at One Righter Parkway, Suite 100, Wilmington, DE 19803.

## FACTUAL ALLEGATIONS

### Identity Theft

10. On or around April 24, 2025, an unknown and unauthorized individual (the "Fraudster") used Plaintiff's personal identifying information to cause JPMCB Card Services to open an Amazon Prime Visa credit-card account in Plaintiff's name, without Plaintiff's knowledge, consent, or authorization. Plaintiff did not apply for, open, authorize, use, or benefit from the account or any purchases made through it.

11. In or around May 2025, the Fraudster contacted Plaintiff, identified himself as "Henry James," and falsely represented that he was an employee of Chase.

12. During the call, the Fraudster falsely informed Plaintiff that Chase had taken over

the servicing of her legitimate Roamans credit-card account from Comenity Bank and instructed Plaintiff to redirect her existing $85 monthly payments to a Chase account designated by the Fraudster.

13. Reasonably relying on the Fraudster's representation that he was a Chase employee facilitating the transfer of her Roamans account, Plaintiff provided the banking information necessary to establish recurring $85 payments from her TD Bank checking account.

14. Plaintiff had no reason to believe that she was opening, authorizing, or assuming responsibility for a new JPMCB account. To the contrary, the caller identified himself as a Chase employee, provided a purported employee-identification number, and contacted Plaintiff through a telephone number that appeared on her caller-identification display as "JPMorgan Chase," reinforcing Plaintiff's belief that she was communicating with Chase concerning the continued payment of her existing Roamans account.

15. Unbeknownst to Plaintiff, the recurring payments she authorized for the limited purpose of paying her legitimate Roamans account were instead directed to and credited against the unauthorized JPMCB/Amazon Prime Visa account that the Fraudster had caused to be opened in her name.

16. Thereafter, monthly payments of $85.00 continued to be automatically withdrawn from Plaintiff's TD Bank checking account, as they had been pursuant to her longstanding automatic-payment arrangement, and Plaintiff reasonably believed that those payments continued to be applied to her legitimate Roamans account.

17. On or around October 15, 2025, Comenity contacted Plaintiff concerning the absence of payments on her Roamans account and informed her that the account was being suspended for nonpayment.

18. Plaintiff explained that she had previously been contacted by an individual claiming to represent Chase, who informed her that Chase had taken over the servicing of her Roamans account from Comenity and instructed her to redirect her monthly payments to Chase.

19. Comenity informed Plaintiff that the representation was false, that Chase had never assumed responsibility for her Roamans account, and that Comenity remained the issuer and servicer of the account. This was the first time Plaintiff learned that the monthly payments withdrawn from her TD Bank checking account were not being applied to her legitimate Roamans account.

20. After learning that Comenity had not received the payments, Plaintiff and her husband reviewed her Experian credit report and discovered a JPMCB credit-card account, carrying a balance exceeding $11,000, that Plaintiff did not recognize and had never knowingly opened or authorized. Plaintiff then realized that she had been deceived and that the monthly payments she believed were being applied to her legitimate Roamans account had instead been credited toward the unauthorized JPMCB account.

21. Upon discovering the unauthorized account on her Experian credit report, Plaintiff promptly contacted Chase and reported that she had never opened or authorized the account. Because Plaintiff had no records concerning the account, Chase provided her with the account's last four digits, 3635, and informed her that the account had been opened in April 2025 and had received payments from her TD Bank checking account.

22. During Chase's handling of Plaintiff's fraud claim, Chase informed Plaintiff that it had changed the card number associated with the disputed Amazon Prime Visa account from an account ending in 3635 to an account ending in 6039. The change in account number did not represent a separate account applied for, opened, authorized, or used by Plaintiff.

23. Accordingly, the references to accounts ending in 3635 and 6039 contained in Amazon's investigation findings, Chase's correspondence, and Plaintiff's consumer reports concern the same underlying JPMCB account and the fraudulent activity associated with it.

24. Plaintiff did not apply for, consent to, or authorize the opening of the JPMCB account.

25. Plaintiff did not authorize the Fraudster or any other person to act on her behalf in applying for, opening, accessing, or using the JPMCB account.

26. After Plaintiff spoke with JPMCB's fraud department concerning the unauthorized account and fraudulently diverted payments, an $85 credit from Chase was posted to Plaintiff's TD Bank account in October 2025. The amount returned was identical to the recurring monthly payments Plaintiff had intended to make toward her legitimate Comenity/Roamans account.

27. On November 23, 2025, Comenity issued Plaintiff a written notice expressly acknowledging that fraud had been committed in connection with her Roamans account and stating that, because of that fraud, Comenity had enrolled the account in its Hardship Program.

28. In the same notice, Comenity confirmed that it issued and serviced Plaintiff's Roamans account and that Chase did not issue or service that account, thereby corroborating Plaintiff's account that she had been deceived into redirecting payments under the false representation that Chase had assumed responsibility for the Roamans account.

29. Beginning in or around October 2025 and continuing through at least April 2026, Plaintiff repeatedly contacted Chase's Fraud Department to report that she had not opened, authorized, or used the JPMCB account and that the charges associated with the account resulted from identity theft.

30. During those communications, Plaintiff explained that the monthly payments from

her TD Bank account did not reflect her ownership or authorization of the JPMCB account, but resulted from the Fraudster's false representation that Chase had taken over the servicing of her legitimate Roamans account.

31. In a letter dated December 30, 2025, Chase advised Plaintiff that it had completed its fraud investigation, determined that she was responsible for the JPMCB account, and declined to remove the account or the associated balance.

32. In a further letter dated January 5, 2026, Chase maintained that the account was valid and had not been opened through a fraudulent application.

33. On January 8, 2026, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), reporting that the JPMCB account had been opened through identity theft and challenging Chase's refusal to recognize or meaningfully investigate the fraud.

34. In a letter dated January 23, 2026, Chase reiterated its prior determination that the JPMCB account was valid and that Plaintiff was responsible for the account and its balance.

35. On February 5, 2026, Chase responded concerning Plaintiff's fraud claim and continued to maintain that Plaintiff had opened the JPMCB account. Chase further advised Plaintiff that it would continue reporting the account to the consumer reporting agencies ("CRAs") and declined to return the payments withdrawn from Plaintiff's TD Bank account.

36. On February 24, 2026, Chase sent Plaintiff a past-due notice demanding payment on the disputed account, notwithstanding Plaintiff's repeated notification that she had never knowingly or voluntarily opened, authorized, or used the account.

37. In a notice dated April 2, 2026, Chase advised Plaintiff concerning the charge-off of the disputed JPMCB account.

**Plaintiff Obtains Her Credit Reports and Confirms the Reporting of the JPMCB and Comenity Account in Plaintiff's Consumer Files**

38. In or around June 2026, Plaintiff obtained copies of her consumer files from the Credit Bureau Defendants. The reports contained tradelines for the unauthorized JPMCB account and Plaintiff's legitimate Comenity/Roamans account (collectively, the "Subject Tradelines"), each containing derogatory information arising from the identity-theft scheme.

39. The Credit Bureau Defendants reported that Plaintiff was individually responsible for the JPMCB account opened on April 24, 2025, and that she owed a charged-off and past-due balance of approximately $12,525. The reports also attributed the account's delinquent payment history to Plaintiff. These notations were patently false because Plaintiff had never applied for, opened, authorized, used, or benefited from the account or the purchases charged to it.

40. The reports also displayed late payments on Plaintiff's legitimate Comenity/Roamans account from approximately August 2025 through January 2026. Although the Comenity account belonged to Plaintiff, the derogatory reporting was materially misleading because it portrayed the delinquencies without reflecting that Plaintiff's customary $85 monthly payments had been diverted through an identity-theft scheme while she reasonably believed that those payments continued to satisfy her Roamans obligation.

41. A late-payment notation communicates to users of a consumer report that the consumer failed to satisfy a financial obligation when due and therefore reflects adversely upon the consumer's willingness or ability to repay debt. Plaintiff's missed Comenity payments reflected neither. Plaintiff continued making the same customary $85 monthly payments from her TD Bank checking account and reasonably believed that she was satisfying her Roamans obligation, but the payments were diverted through a fraud scheme beyond her knowledge and control. Reporting Plaintiff as delinquent therefore attributed the consequences of account

hijacking and identity theft to Plaintiff's own payment conduct and created the materially misleading impression that she was financially irresponsible or unwilling or unable to pay her obligations, when the missed payments did not accurately reflect her creditworthiness. The missed payments were rather completely due to the fraud perpetuated by an unauthorized third party and nothing about Plaintiff's responsibility or credit worthiness.

42. The falsity of the JPMCB tradeline was objectively and readily verifiable. Amazon's written investigation confirmed that Plaintiff's account had been accessed without authorization from an unrecognized device and geographic location; that the unauthorized user concealed purchases by archiving them; that the Amazon Prime Visa ending in 3635 was used for those purchases; and that the purchases were delivered to locations that did not match Plaintiff's residence. The unauthorized purchases began on April 25, 2025, one day after the JPMCB account was opened, and continued through approximately September 1, 2025.

43. Comenity separately acknowledged in writing that fraud had occurred in connection with Plaintiff's Roamans account and enrolled the account in its Hardship Program because of that fraud. Comenity also confirmed that it remained the issuer and servicer of the Roamans account and that Chase had never serviced it. Amazon's findings and Comenity's acknowledgments objectively corroborated Plaintiff's account of the scheme: the JPMCB account and purchases were unauthorized, while the apparent payments to JPMCB resulted from Plaintiff being deceived into believing that she was continuing to pay her legitimate Roamans account.

**Plaintiff's Dispute to the CRA Defendants July 2026**

44. Concerned that JPMCB would continue furnishing the unauthorized JPMCB account as belonging to her and that Comenity would continue furnishing late payments arising from the related payment-diversion scheme, Plaintiff determined that she needed to dispute the

reporting with the Credit Bureau Defendants to prevent further damage to her consumer files and reports.

45. On July 14, 2026, Plaintiff mailed written disputes to Experian, Equifax, Trans Union, and Innovis concerning the JPMCB and Comenity tradelines. Plaintiff informed the Credit Bureau Defendants that she had never applied for, opened, authorized, or used the JPMCB account and that the account and its $12,525 balance resulted from identity theft. Plaintiff separately explained that the Comenity account belonged to her, but that its late-payment history arose because her customary monthly payments had been diverted through the same fraud scheme.

46. Plaintiff's disputes described the fraud in detail. She explained how an individual impersonating a Chase employee obtained her banking information by falsely claiming that Chase had taken over the servicing of her Roamans account; how Plaintiff continued permitting automatic $85 withdrawals while believing that she was paying Roamans; and how those payments were instead credited toward the unauthorized JPMCB account. Plaintiff identified the specific furnishers, account numbers, opening dates, balances, and derogatory information being challenged.

47. Plaintiff supported her disputes with an FTC identity-theft affidavit, documentation sufficient to verify her identity and current address, Comenity's November 23, 2025 written acknowledgment of fraud in connection with the Roamans account, and Amazon's April 9, 2026 written investigation findings confirming unauthorized activity involving the Amazon Prime Visa ending in 3635.

48. Plaintiff provided the Credit Bureau Defendants with sufficient information to identify her consumer files, the precise information being disputed, the nature of each inaccuracy, and the documentary basis for her disputes. Plaintiff requested that the unauthorized JPMCB

account be blocked and removed as identity-theft information, that the misleading Comenity late-payment history be deleted or corrected, that the relevant furnishers be notified, and that she receive updated copies of her consumer reports.

49. Plaintiff requested that the fraudulent JPMCB account be deleted and permanently blocked from her consumer files and reports, that the false and materially misleading late-payment notations associated with her Comenity/Roamans account be corrected, and that the Credit Bureau Defendants provide her with corrected copies of her consumer reports reflecting those changes.

**Defendant Equifax's Unreasonable Dispute Reinvestigation July 2026**

50. Upon information and belief, Defendant Equifax received Plaintiff's July 2026 dispute, including her request that the fraudulent JPMCB account be deleted and permanently blocked from her consumer file and that the false and materially misleading late-payment notations associated with her Comenity account be corrected.

51. Pursuant to Plaintiff's dispute, Equifax transmitted automated consumer dispute verifications ("ACDVs") to JPMCB and Comenity, thereby notifying each furnisher of the specific information Plaintiff disputed and triggering their respective duties to conduct reasonable investigations.

52. JPMCB received Equifax's ACDV but failed to conduct a reasonable investigation into whether Plaintiff had opened, authorized, used, or benefited from the disputed JPMCB account, including the unauthorized Amazon purchases charged to it.

53. Comenity likewise received Equifax's ACDV and was notified that Plaintiff disputed the late-payment notations because her customary monthly payments had been diverted through the identity-theft scheme that Comenity had previously acknowledged in writing.

54. On July 23, 2026, Equifax advised Plaintiff that it could not complete her requested

correction without additional proof of identity, even though Plaintiff's dispute package contained documentation sufficient to identify her consumer file and verify her identity and current address.

55. On August 6, 2026, Equifax issued results that mischaracterized Plaintiff's dispute as concerning items that were not being reported, addressed information Plaintiff had not disputed, and failed to meaningfully resolve whether the unauthorized JPMCB account and the challenged Comenity late-payment notations were accurate.

56. On August 8, 2026, Equifax informed Plaintiff that the JPMCB account had previously been deleted but had been reinserted at the furnisher's request after the furnisher certified that the account was complete, accurate, and belonged to Plaintiff.

57. On August 9, 2026, Equifax informed Plaintiff that it had deleted the Comenity account because the account had been opened fraudulently. That response materially misconstrued Plaintiff's dispute because Plaintiff had never claimed that the Comenity account was unauthorized. Plaintiff disputed only the late-payment notations arising from the fraudulent diversion of payments she intended for that legitimate account.

58. Equifax failed to review and meaningfully evaluate all relevant information Plaintiff submitted, including the FTC identity-theft documentation, Amazon's written investigation findings, Comenity's written acknowledgment of fraud, and Plaintiff's detailed explanation of how her monthly payments had been diverted to the unauthorized JPMCB account.

59. Equifax's results were internally contradictory. Equifax left the Comenity account deleted after receiving notice that Plaintiff had fallen victim to a fraud scheme involving that account, yet reinserted the JPMCB account that Equifax knew had been produced through the very same fraud scheme. Plaintiff had specifically explained that the Fraudster induced her to redirect the automatic payments intended for her legitimate Comenity account to the fraudulently opened

JPMCB account. Equifax therefore could not reasonably leave the Comenity account deleted in recognition of the fraud while simultaneously reinserting the JPMCB account charges to which Plaintiff's payments had been fraudulently diverted and which Amazon itself confirmed was a product of fraud. That Equifax reached precisely the opposite result from the facts presented is telling and demonstrates that it misunderstood Plaintiff's dispute, merely parroted the furnishers' responses, and failed to meaningfully or independently evaluate and verify the accuracy of the disputed information.

60. Equifax further failed to reconcile JPMCB's verification with Amazon's objective findings that the account ending in 3635 was used during unauthorized access from an unrecognized device and geographic location, that the resulting purchases were concealed by the unauthorized user, and that the purchases were delivered to locations that did not match Plaintiff's residence.

61. Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation, failing to review and consider all relevant information submitted by Plaintiff, accepting facially inconsistent and unsupported verification results, misconstruing the nature of Plaintiff's Comenity dispute, and failing to delete or correct information that was patently false or materially misleading.

62. Equifax violated 15 U.S.C. § 1681i(a)(5)(B) and (C) by reinserting the previously deleted JPMCB account based upon a purported furnisher certification that was facially irreconcilable with the specific identity-theft evidence submitted by Plaintiff, and by failing to maintain reasonable procedures designed to prevent the reappearance of previously deleted information that had not been reinserted in accordance with a valid certification of completeness and accuracy. JPMCB's conclusory assertion that the account belonged to Plaintiff did not

meaningfully certify the accuracy of the disputed information because it failed to address and prove that Plaintiff applied for or authorized the account, whether she made or benefited from the Amazon purchases, or how its verification could be reconciled with Amazon's objective fraud findings.

63. Equifax violated 15 U.S.C. § 1681c-2 by failing to permanently block the fraudulent JPMCB account, and the late payments resultant from the fraudulent opening of the JPMCB account, from Plaintiff's consumer file after Plaintiff identified the account as the product of identity theft and supplied documentation supporting her identity-theft claim.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation July 2026**

64. On or around July 22, 2026, Defendant Trans Union received Plaintiff's July 2026 dispute, including her request that the fraudulent JPMCB account be deleted and permanently blocked from her consumer file and that the false and materially misleading late-payment notations associated with her Comenity account be corrected.

65. Pursuant to Plaintiff's dispute, Trans Union transmitted automated consumer dispute verifications ("ACDVs") to JPMCB and Comenity, thereby notifying each furnisher of the specific information Plaintiff disputed and triggering their respective duties to conduct reasonable investigations.

66. JPMCB received Trans Union's ACDV but failed to conduct a reasonable investigation into whether Plaintiff had opened, authorized, used, or benefited from the disputed JPMCB account, including the unauthorized Amazon purchases charged to it.

67. Comenity likewise received Trans Union's ACDV and was notified that Plaintiff disputed the late-payment notations because her customary monthly payments had been diverted through the identity-theft scheme that Comenity had previously acknowledged in writing.

68. On August 9, 2026, Trans Union issued dispute results informing Plaintiff that the previously deleted JPMCB account had been verified and reinserted into her consumer file.

69. Trans Union thereafter continued reporting the JPMCB account, including its balance of approximately $12,525 and derogatory charge-off status, while leaving the Comenity account deleted from Plaintiff's consumer file.

70. Trans Union's results were internally contradictory. Trans Union left the Comenity account deleted after receiving notice that Plaintiff had fallen victim to a fraud scheme involving that account, yet reinserted the JPMCB account that Trans Union knew had been produced through the very same fraud scheme. Plaintiff had specifically explained that the Fraudster induced her to redirect the automatic payments intended for her legitimate Comenity account to the fraudulently opened JPMCB account. Trans Union therefore could not reasonably leave the Comenity account deleted in recognition of the fraud while simultaneously reinserting the JPMCB account to which Plaintiff's payments had been fraudulently diverted. That Trans Union reached precisely the opposite result from the facts presented is telling and demonstrates that it misunderstood Plaintiff's dispute, merely parroted the furnishers' responses, and failed to meaningfully or independently evaluate and verify the accuracy of the disputed information.

71. Trans Union failed to review and meaningfully evaluate all relevant information Plaintiff submitted, including the FTC identity-theft documentation, Comenity's written acknowledgment of the related fraud, Plaintiff's detailed explanation of the payment-diversion scheme, and Amazon's objective findings that the account ending in 3635 was used during unauthorized access from an unrecognized device and geographic location, that the resulting purchases were concealed by the unauthorized user, and that the purchases were delivered to locations that did not match Plaintiff's residence.

72. Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation, failing to review and consider all relevant information submitted by Plaintiff, accepting facially inconsistent and unsupported verification results, and failing to delete or correct information that was patently false or materially misleading. Trans Union further violated 15 U.S.C. § 1681i(a)(5)(B) by reinserting the previously deleted JPMCB account despite knowing, or possessing more than sufficient information to know, that the account resulted from fraud and identity theft and that any furnisher verification was contradictory with the objective evidence submitted by Plaintiff.

73. Trans Union violated 15 U.S.C. § 1681i(a)(5)(B) and (C) by reinserting the previously deleted JPMCB account without obtaining a valid certification establishing that the account was complete and accurate as reported, and by failing to maintain reasonable procedures designed to prevent the reappearance of information deleted through Plaintiff's identity-theft dispute. Any purported certification merely repeating that the account belonged to Plaintiff was facially deficient because it failed to address the specific fraud evidence submitted with Plaintiff's dispute, including Amazon's confirmation that the account ending in 3635 had been used to make concealed and unauthorized purchases from an unrecognized device and geographic location.

74. Trans Union violated 15 U.S.C. § 1681c-2 by failing to permanently block the fraudulent JPMCB account from Plaintiff's consumer file after Plaintiff identified the account as the product of identity theft and supplied documentation supporting her identity-theft claim.

**Defendant Experian's Unreasonable Dispute Reinvestigation July 2026**

75. On or around July 21, 2026, Defendant Experian received Plaintiff's July 2026 dispute, including her request that the fraudulent JPMCB account be deleted and permanently blocked from her consumer file and that the false and materially misleading late-payment notations

associated with her Comenity account be corrected.

76. Pursuant to Plaintiff's dispute, Experian transmitted automated consumer dispute verifications ("ACDVs") to JPMCB and Comenity, thereby notifying each furnisher of the specific information Plaintiff disputed and triggering their respective duties to conduct reasonable investigations.

77. JPMCB and Comenity received Experian's ACDVs but failed to conduct reasonable investigations into the information Plaintiff disputed. JPMCB failed to reasonably investigate and verify whether Plaintiff had actually opened, authorized, used, or benefited from the JPMCB account and the unauthorized Amazon purchases charged to it. Comenity failed to reasonably investigate and verify whether its late-payment notations accurately represented Plaintiff's payment conduct in light of the fraud it had previously acknowledged in writing.

78. On July 28, 2026, Experian issued dispute results informing Plaintiff that both the JPMCB account and the Comenity account had been deleted from her consumer file.

79. On August 7, 2026, Experian issued a subsequent dispute response informing Plaintiff that the previously deleted JPMCB account had been updated and reinserted into her consumer file.

80. Experian thereafter also reinserted the Comenity account, including the challenged late-payment notations that it had initially deleted. Plaintiff's updated Experian reports dated August 24 and August 26, 2026, confirmed that Experian was again reporting both the fraudulent JPMCB account and the derogatory Comenity late-payment history.

81. Experian's initial deletion of both tradelines demonstrates that the information had been removed in response to Plaintiff's documented fraud dispute. Experian nevertheless reversed those results and reinserted both tradelines based on the furnishers' certifications without

conducting any meaningful evaluation of whether those certifications could be reconciled with the objective evidence Plaintiff had submitted.

82. Experian's reinsertion procedure was passive and unreasonable. Rather than independently evaluating the information contained in Plaintiff's dispute, Experian merely accepted and repeated the furnishers' conclusions. Experian did not determine whether JPMCB or Comenity had reviewed the underlying fraud evidence, addressed the specific facts identified by Plaintiff, or possessed any evidence capable of rebutting the documentation supporting her dispute.

83. JPMCB's verification could not reasonably be reconciled with Amazon's written investigation findings. Amazon confirmed that the card ending in 3635 was used to make purchases during unauthorized access to Plaintiff's Amazon account from an unrecognized device and geographic location; that the unauthorized user concealed the purchases by archiving them; and that the purchases were delivered to locations that did not match Plaintiff's residence. Nothing in Experian's results indicated that JPMCB produced evidence showing that Plaintiff applied for the account, authorized its opening, made or approved the purchases, received the purchased merchandise, or otherwise benefited from the account.

84. Comenity's verification likewise could not reasonably be reconciled with Comenity's own written acknowledgment that Plaintiff had fallen victim to fraud in connection with her Roamans account. Comenity had confirmed that Chase never issued or serviced the Roamans account and had enrolled Plaintiff in its Hardship Program because of the fraud. Nothing in Experian's results indicated that Comenity produced evidence disproving Plaintiff's explanation that her customary $85 automatic payments had been diverted to the fraudulent JPMCB account through a third party's fraudulent interference.

85. The information necessary to evaluate Plaintiff's dispute was objective and readily

verifiable. Experian could compare the furnishers' responses with the FTC identity-theft documentation, Amazon's investigation findings, Comenity's written acknowledgment, the account-opening and transaction history, the delivery addresses associated with the unauthorized purchases, and Plaintiff's documented explanation of the diverted automatic payments. Experian failed to perform that comparison or otherwise verify that the reinserted information was complete and accurate.

86. Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation, failing to review and consider all relevant information submitted by Plaintiff, accepting and parroting unsupported furnisher responses, and failing to delete or correct information that was patently false or materially misleading.

87. Experian violated 15 U.S.C. § 1681i(a)(5)(B) and (C) by reinserting both the previously deleted JPMCB account and the previously deleted Comenity late-payment notations without obtaining valid certifications that meaningfully established the completeness and accuracy of the disputed information, and by failing to maintain reasonable procedures designed to prevent their reappearance in Plaintiff's consumer file and reports. The purported certifications could not establish completeness and accuracy because they failed to address Amazon's objective findings concerning the unauthorized JPMCB activity, Comenity's written acknowledgment of the fraud affecting Plaintiff's Roamans account, and Plaintiff's documented explanation that her customary automatic payments had been fraudulently diverted from Comenity to the unauthorized JPMCB account. Experian further failed to provide Plaintiff with a timely and statutorily compliant notice identifying the reinsertion of the Comenity late-payment notations, the furnisher responsible for their reinsertion, and Plaintiff's right to place a statement disputing the information in her consumer file.

88. Experian violated 15 U.S.C. § 1681c-2 by failing to permanently block the fraudulent JPMCB account from Plaintiff's consumer file after Plaintiff identified the account as the product of identity theft and supplied all of the requisite documentation supporting her identity-theft claim. Experian separately failed to permanently block the fraudulent, false, and materially misleading Comenity late-payment notations resulting from the same identity-theft scheme.

**The Credit Bureau Defendant' Method for Considering Consumer Credit Report Disputes**

89. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

90. The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

91. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."

92. It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

93. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

94. Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

95. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

96. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

97. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

98. The data furnishers, like Defendants JPMCB and Comenity, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

99. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant JPMCB's Unreasonable Dispute Investigation July 2026**

100. Upon information and belief, JPMCB received from the Credit Bureau Defendants the substance of Plaintiff's disputes and all relevant information concerning her contention that the JPMCB account had been opened and used through fraud and identity theft.

101. Upon information and belief, JPMCB received Equifax's ACDV concerning the disputed JPMCB account and responded by verifying that the account and its accompanying balance and derogatory history were complete, accurate, and attributable to Plaintiff.

102. Upon information and belief, JPMCB received Trans Union's ACDV concerning the disputed JPMCB account and responded by verifying that the account and its accompanying balance and derogatory history were complete, accurate, and attributable to Plaintiff.

103. Upon information and belief, JPMCB received Experian's ACDV concerning the disputed JPMCB account and responded by verifying that the account and its accompanying balance and derogatory history were complete, accurate, and attributable to Plaintiff.

104. In violation of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), JPMCB failed to conduct reasonable investigations of the disputed information and failed to review and meaningfully consider all relevant information transmitted by the Credit Bureau Defendants. JPMCB failed to reasonably determine whether Plaintiff had applied for, opened, authorized, used, or benefited from the account and whether the purchases and resulting balance were products of fraud and identity theft.

105. JPMCB's investigations failed to account for the FTC identity-theft documentation, Plaintiff's detailed description of the impersonation and payment-diversion scheme, Comenity's written acknowledgment of the related fraud, and Amazon's objective findings that the card ending in 3635 had been used to make concealed and unauthorized purchases through access originating from an unrecognized device and geographic location. JPMCB also failed to reconcile the delivery of the merchandise to locations that did not match Plaintiff's residence with its conclusion that Plaintiff was responsible for the account and its charges.

106. JPMCB possessed, or had ready access to, the account application, authentication records, identifying information used to open the account, device and IP information, transaction history, purchase and delivery information, payment records, fraud-investigation materials, and the history of the account numbers ending in 3635 and 6039. Nevertheless, JPMCB identified no

evidence establishing that Plaintiff submitted the application, authorized the opening of the account, made or approved the Amazon purchases, received the merchandise, or otherwise benefited from the account. JPMCB instead treated the monthly payments from Plaintiff's TD Bank account as evidence of responsibility without meaningfully addressing Plaintiff's documented explanation that those payments had been fraudulently diverted from her legitimate Comenity/Roamans account.

107. In violation of 15 U.S.C. § 1681s-2(b)(1)(C), JPMCB reported inaccurate investigation results to Equifax, Trans Union, and Experian by verifying that the fraudulent account, its balance, and its derogatory payment history were complete, accurate, and attributable to Plaintiff. JPMCB further requested or caused the previously deleted account to be reinserted into Plaintiff's consumer files despite the substantial and objective evidence demonstrating that the account and purchases were unauthorized.

108. In violation of 15 U.S.C. § 1681s-2(b)(1)(D) and (E), JPMCB failed to report the inaccurate, incomplete, and unverifiable nature of the disputed information to every consumer reporting agency to which it had furnished the information and failed to promptly modify, delete, or permanently block the reporting of the fraudulent account which it principally could not verify as accurate and complete. Instead, JPMCB continued furnishing the account as belonging to Plaintiff and continued attributing its balance, charge-off status, and derogatory history to her.

109. JPMCB violated 15 U.S.C. § 1681s-2(b)(1)(A) through (E) by failing to conduct reasonable investigations, failing to review all relevant information provided by the Credit Bureau Defendants, reporting unsupported and inaccurate investigation results, failing to notify all consumer reporting agencies that the furnished information was inaccurate, incomplete, or unverifiable, and failing to modify, delete, or permanently block the fraudulent JPMCB account

from Plaintiff's consumer files and reports.

**Defendant Comenity's Unreasonable Dispute Investigation July-August 2026**

110. Upon information and belief, Comenity received Experian's ACDV concerning Plaintiff's dispute of the late-payment notations associated with her legitimate Comenity/Roamans account, together with the substance of Plaintiff's dispute and all relevant information provided in support of it.

111. Before receiving Experian's ACDV, Comenity already possessed actual knowledge that Plaintiff had fallen victim to fraud affecting the payment of her Roamans account. In its November 23, 2025 written notice, Comenity expressly acknowledged that fraud had occurred in connection with the account, confirmed that Chase had never issued or serviced the account, and enrolled Plaintiff in its Hardship Program because of the fraud.

112. Upon information and belief, Comenity nevertheless responded to Experian's ACDV by verifying that the challenged late-payment notations were complete and accurate and by continuing to attribute those delinquencies to Plaintiff.

113. Comenity's verification caused or permitted Experian to reinsert the previously deleted Comenity account and its disputed late-payment history into Plaintiff's consumer file and reports. Plaintiff's updated Experian reports dated August 24 and August 26, 2026, confirmed that the Comenity account and its derogatory late-payment notations had reappeared.

114. In violation of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Comenity failed to conduct a reasonable investigation and failed to review and meaningfully consider all relevant information transmitted by Experian. Comenity failed to determine whether the late-payment notations accurately and completely represented Plaintiff's payment conduct in light of the fraud that Comenity had already acknowledged in its own records.

115. Comenity failed to reconcile its verification with its prior written acknowledgment that fraud had affected Plaintiff's Roamans account. Comenity also failed to meaningfully consider Plaintiff's explanation that she continued permitting customary $85 automatic withdrawals from her TD Bank checking account while reasonably believing that the payments were satisfying her Roamans obligation, but that the payments had instead been diverted to the fraudulently opened JPMCB account through a third party's fraudulent interference.

116. Comenity possessed no evidence disproving Plaintiff's documented explanation or establishing that the missed payments resulted from Plaintiff's unwillingness or inability to satisfy her financial obligations. By verifying the late-payment notations without accounting for the fraud it had already acknowledged, Comenity caused Plaintiff's reports to convey the materially misleading impression that she had irresponsibly failed to pay her legitimate account, when the missed payments resulted from a fraud scheme beyond her knowledge and control.

117. In violation of 15 U.S.C. § 1681s-2(b)(1)(C), Comenity reported an inaccurate and incomplete investigation result to Experian by verifying the disputed late-payment history as complete and accurate. In violation of § 1681s-2(b)(1)(D) and (E), Comenity failed to report the inaccurate, incomplete, and materially misleading nature of that information to every consumer reporting agency to which it had furnished the information and failed to promptly modify, delete, or permanently block the disputed late-payment notations. Instead, Comenity's verification caused or permitted the derogatory information to be reinserted into Plaintiff's Experian file and reports.

118. Comenity violated 15 U.S.C. § 1681s-2(b)(1)(A) through (E) by failing to conduct a reasonable investigation, failing to review all relevant information provided by Experian, reporting an unsupported and inaccurate investigation result, failing to notify all consumer reporting agencies that the disputed information was inaccurate, incomplete, or unverifiable, and

failing to modify, delete, or permanently block the false and materially misleading Comenity late-payment notations.

**PLAINTIFF'S DAMAGES**

119. Upon discovering the identity-theft scheme on or around October 15, 2025, Plaintiff promptly reported the unauthorized account to JPMCB, secured the financial and retail accounts that had been compromised, and began obtaining documentation necessary to establish that the JPMCB account had been opened and used without her knowledge or authorization.

120. Beginning in October 2025 and continuing throughout the ensuing months, Plaintiff disputed the JPMCB account directly with JPMCB on multiple occasions. Plaintiff consistently explained that she had never applied for, knowingly opened, authorized, used, or benefited from the account and that the monthly payments JPMCB relied upon had been obtained by deceiving her into redirecting payments intended for her legitimate Comenity/Roamans account.

121. Plaintiff filed an identity-theft report with the Federal Trade Commission and obtained independent documentation corroborating her account of the fraud, including Amazon's written investigation findings and Comenity's written acknowledgment that Plaintiff had fallen victim to fraud affecting the payment history of her legitimate Roamans account.

122. On or around July 14, 2026, Plaintiff submitted detailed written disputes to Equifax, Experian, and Trans Union. Plaintiff specifically distinguished between the two inaccuracies: the JPMCB account was entirely unauthorized, while the Comenity account was legitimate but contained false and materially misleading late-payment notations arising from the fraudulent diversion of her customary $85 monthly payments.

123. Plaintiff supported her disputes with the FTC identity-theft documentation, Amazon's investigation findings, Comenity's written acknowledgment of the related fraud,

documentation identifying the affected accounts, and a detailed explanation of how the Fraudster induced her to redirect the automatic payments intended for Comenity to the unauthorized JPMCB account.

124. Plaintiff requested that Equifax, Experian, and Trans Union delete and permanently block the fraudulent JPMCB account, correct the false and materially misleading Comenity late-payment history, and provide her with corrected copies of her consumer reports.

125. Notwithstanding Plaintiff's detailed disputes and supporting documentation, Equifax, Experian, and Trans Union failed to permanently block the fraudulent JPMCB account. Each CRA instead accepted JPMCB's verification and permitted the previously deleted account to reappear in Plaintiff's consumer file. Experian also permitted the previously deleted Comenity account and its challenged late-payment notations to reappear in Plaintiff's reports by approximately August 24 and August 26, 2026.

126. The furnishers' bare verifications did not resolve the factual issues raised by Plaintiff's disputes. Amazon's investigation objectively confirmed that the JPMCB card ending in 3635 was used during unauthorized access from an unrecognized device and geographic location, that the unauthorized purchases were concealed from Plaintiff, and that the merchandise was delivered to locations that did not match Plaintiff's residence. Comenity separately acknowledged the related fraud and confirmed that Chase had never issued or serviced Plaintiff's legitimate Roamans account.

127. Neither the use of Plaintiff's personal identifiers nor the presence of payments from her TD Bank account reasonably established that Plaintiff authorized or owed the JPMCB account. Identity theft necessarily involves the misuse of a victim's identifying information, and Plaintiff specifically documented that the payments were made only because the Fraudster deceived her

into believing that they were continuing to satisfy her longstanding Comenity/Roamans payment obligation.

128. Upon information and belief, JPMCB verified to Equifax, Experian, and Trans Union that the fraudulent JPMCB account, its balance, charge-off status, and derogatory history were complete, accurate, and attributable to Plaintiff. Upon information and belief, Comenity separately verified to Experian that the challenged late-payment notations on Plaintiff's legitimate Comenity account were complete and accurate. Those verifications caused the disputed information to be reinserted and republished despite the objective, readily verifiable, and materially contradictory evidence establishing that the JPMCB account was unauthorized and that the Comenity delinquencies resulted from the same documented fraud scheme.

129. As a direct result of Defendant Equifax's ardent refusal to block the Fraudulent Account, which was a product of identity theft, Defendant Equifax has continued to saddle Plaintiff with the fraudulent account and false and materially misleading payment histories that were the product of identity theft.

130. As a direct result of Defendant Experian's ardent refusal to block the Fraudulent Account, which was a product of identity theft, Defendant Experian has continued to saddle Plaintiff with an open loan account that was the product of identity theft.

131. As a direct result of Defendant Trans Union's ardent refusal to block the Fraudulent Account, which was a product of identity theft, Defendant Trans Union has continued to saddle Plaintiff with an open loan account that was the product of identity theft.

132. Further, as a direct result of Defendant JPMCB's verification of the disputed Fraudulent Account to Defendants Equifax, Experian, and Trans Union, Defendant JPMCB has continued to saddle Plaintiff with an open loan account which was the product of identity theft.

133. On or around August 20, 2026, Plaintiff sought credit from Capital One and was denied because of the derogatory information appearing in her consumer reports, including the fraudulent JPMCB account and the false and materially misleading Comenity late-payment history.

134. On or around August 20, 2026, Plaintiff also sought credit from Wells Fargo and was informed that Wells Fargo could not match her with any credit-card offers because of the derogatory information appearing in her consumer reports.

135. On September 4, 2026, Plaintiff applied for an American Express credit card and was denied. Upon information and belief, the denial resulted predominantly from the fraudulent JPMCB account and the erroneous and materially misleading delinquencies reported on the JPMCB and Comenity accounts, all of which arose from the fraud scheme of which Plaintiff was a victim.

136. As a direct and proximate result of Defendants' violations of the FCRA, Plaintiff sustained no fewer than two denials of credit, including denials from Capital One and Wells Fargo, due to the fraudulent and derogatory information that Defendants recklessly and willfully perpetuated in her consumer files and reports.

137. Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate her disputes.

138. Defendants' continued reporting and verification of the disputed information, despite Plaintiff's repeated efforts to establish that she was the victim of identity theft, caused Plaintiff substantial emotional and physical distress. Among other injuries, Plaintiff experienced chest pain, depression, and insomnia, which interfered with her sleep, emotional well-being, and

ability to carry on her ordinary daily activities.

139. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

140. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

141. Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time she receives another communication from Defendants. Her ongoing stress and anxiety regarding the situation have affected her and her relationships negatively.

142. CRA Defendants Equifax, Experian, and Trans Union have a long history of disregarding the credit reporting rights of identity theft victims under the FCRA. For example, in the very similar matter of April *Hendrix vs. Equifax, et. al.*, (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several CRAs, including CRA Defendants Equifax, Experian, and Trans Union, over their repeated wrongful removal of security freezes, release of her credit reports for impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on her credit reports.

143. The *Hendrix* suit put the Credit Bureau Defendants on notice several years ago that their respective policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

144. The Credit Bureau Defendants have had years of notice in the form of federal lawsuits, despite it all, the Credit Bureau Defendants did not take any better steps to protect the

Plaintiff here.

145. The respective internal policies and procedures of the Credit Bureau Defendants do not appear to place any value on its obligations under the FCRA to report credit entries accurately, to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose. Nor do the Credit Bureau Defendants' respective policies and procedures respect their statutory duties to enforce or at minimum add security freezes and fraud alerts as requested by the consumer.

146. As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the data furnishers, like Defendant JPMCB here, despite numerous court decisions admonishing this practice. See *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

147. The Credit Bureau Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

148. The Credit Bureau Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers

and led directly to the injuries of Plaintiff as described in this complaint.

149. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered actual damages, including no fewer than two denials of credit; the loss of her ability to obtain and use credit on favorable terms; damage to her credit reputation and credit rating; diminished overall creditworthiness; out-of-pocket expenses; and the substantial expenditure of time, labor, and effort investigating the identity theft, disputing the fraudulent JPMCB account and materially misleading Comenity late-payment history, and attempting to remove or correct that information in her consumer files and reports.

150. Additionally, Plaintiff suffers interference with daily activities, as well as severe and pronounced emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned, and disbelieved by the Defendants.

**COUNT I**
**Violations of 15 U.S.C. § 1681e(b)**
**(Defendants Equifax, Experian, and Trans Union)**

151. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

152. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

153. On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

154. Despite actual and implied knowledge that Plaintiff was the victim of identity theft,

the Credit Bureau Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff had a loan account and that she was delinquent on at least one occasion.

155. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

156. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

157. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

158. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan account that was the product of identity theft.

159. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

160. The Credit Bureau Defendants' conduct, actions, and inactions were willful, or at least negligent, rendering them liable for actual damages, statutory damages, and punitive damages, and attorney's fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT II**
**Violations of 15 U.S.C. § 1681i**
**(Defendants Equifax, Experian, and Trans Union)**

161. Plaintiff incorporates by reference each preceding allegation of this Complaint as though fully set forth herein.

162. Under 15 U.S.C. § 1681i(a)(1)(A), when a consumer directly disputes the completeness or accuracy of information contained in her consumer file, the consumer reporting agency must, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record its current status or delete it from the consumer's file within the applicable statutory period.

163. Under 15 U.S.C. § 1681i(a)(4), a consumer reporting agency must review and consider all relevant information submitted by the consumer. Under § 1681i(a)(5)(A), any disputed information found to be inaccurate, incomplete, or unverifiable must be promptly deleted or appropriately modified, and the furnisher must be notified of that deletion or modification.

164. Under 15 U.S.C. § 1681i(a)(5)(B), information deleted following a reinvestigation may not be reinserted unless the furnisher certifies that the information is complete and accurate. If the information is reinserted, the consumer reporting agency must notify the consumer in writing within five business days and provide the information required by § 1681i(a)(5)(B)(iii). Section 1681i(a)(5)(C) separately requires consumer reporting agencies to maintain reasonable procedures designed to prevent deleted information from reappearing in a consumer's file or reports unless it

is reinserted in accordance with § 1681i(a)(5)(B)(i).

165. On or around July 14, 2026, Plaintiff submitted detailed written disputes to Equifax, Experian, and Trans Union. Plaintiff requested that the fraudulent JPMCB account be deleted and permanently blocked, that the false and materially misleading late-payment notations associated with her legitimate Comenity/Roamans account be corrected, and that each Credit Bureau Defendant provide her with a corrected consumer report.

166. Plaintiff supported her disputes with extensive documentation, including her FTC identity-theft report, Amazon's written investigation findings, Comenity's written acknowledgment of the related fraud, documentation concerning the affected accounts, proof of her identity and current address, and a detailed explanation of how the Fraudster induced her to redirect the customary $85 automatic payments intended for her legitimate Comenity account to the unauthorized JPMCB account.

167. The disputed information was objectively and readily verifiable. Amazon confirmed that the JPMCB card ending in 3635 had been used to make concealed and unauthorized purchases during access from an unrecognized device and geographic location and that the merchandise was delivered to locations that did not match Plaintiff's residence. Comenity separately confirmed that Chase had never issued or serviced Plaintiff's Roamans account and acknowledged the fraud affecting Plaintiff's payment history. Defendants therefore possessed evidence establishing that the JPMCB account was unauthorized and that the Comenity late-payment notations materially misrepresented Plaintiff's payment conduct and creditworthiness.

168. Equifax violated 15 U.S.C. §§ 1681i(a)(1)(A), (a)(4), and (a)(5)(A) by failing to conduct a reasonable reinvestigation, failing to review and meaningfully consider all relevant information submitted by Plaintiff, accepting JPMCB's unsupported verification without

independently evaluating it against the documentary evidence, and failing to delete or modify information that was inaccurate, incomplete, materially misleading, or unverifiable.

169. Equifax further violated 15 U.S.C. § 1681i(a)(5)(B) and (C) by reinserting the previously deleted JPMCB account based upon a purported certification that did not meaningfully establish the completeness and accuracy of the disputed information and by failing to maintain reasonable procedures designed to prevent its improper reappearance. Equifax left the Comenity account deleted in recognition of the fraud affecting it while reinserting the JPMCB account created through the same fraud scheme, despite Plaintiff's explanation that her Comenity payments had been fraudulently diverted to that account.

170. Trans Union violated 15 U.S.C. §§ 1681i(a)(1)(A), (a)(4), and (a)(5)(A) by failing to conduct a reasonable reinvestigation, failing to review and meaningfully consider all relevant information submitted by Plaintiff, accepting JPMCB's unsupported verification without evaluating it against the objective identity-theft evidence, and failing to delete or modify information that was inaccurate, incomplete, materially misleading, or unverifiable.

171. Trans Union further violated 15 U.S.C. § 1681i(a)(5)(B) and (C) by reinserting the previously deleted JPMCB account without obtaining a certification that meaningfully established the completeness and accuracy of the disputed information and by failing to maintain reasonable procedures designed to prevent its improper reappearance. Trans Union continued to omit the Comenity account while reinserting the JPMCB account produced through the same documented fraud scheme, thereby reaching a result that was irreconcilable with the evidence Plaintiff submitted.

172. Experian violated 15 U.S.C. §§ 1681i(a)(1)(A), (a)(4), and (a)(5)(A) by failing to conduct a reasonable reinvestigation, failing to review and meaningfully consider all relevant

information submitted by Plaintiff, merely accepting and repeating the furnishers' unsupported conclusions, and failing to delete or modify information that was inaccurate, incomplete, materially misleading, or unverifiable.

173. Experian further violated 15 U.S.C. § 1681i(a)(5)(B) and (C) by reinserting both the previously deleted JPMCB account and the previously deleted Comenity late-payment notations without obtaining certifications that meaningfully established their completeness and accuracy and by failing to maintain reasonable procedures designed to prevent their improper reappearance. Experian also failed to provide Plaintiff with timely and statutorily compliant written notice identifying the reinsertion of the Comenity late-payment notations, the furnisher responsible for the reinsertion, and Plaintiff's right to place a statement disputing that information in her consumer file.

174. As a direct and proximate result of the Credit Bureau Defendants' violations, Plaintiff sustained no fewer than two denials of credit. On or around August 20, 2026, Capital One informed Plaintiff that it had no credit offer available to her, and Wells Fargo informed Plaintiff that it could not match her with any credit-card offers. These adverse credit decisions resulted from the fraudulent and derogatory information that the Credit Bureau Defendants continued to publish in Plaintiff's consumer files and reports.

175. As a further direct and proximate result of the Credit Bureau Defendants' acts and omissions, Plaintiff suffered actual damages, including the loss of her ability to obtain and use credit on favorable terms; damage to her credit reputation and credit rating; diminished overall creditworthiness; out-of-pocket expenses; and the substantial expenditure of time, labor, and effort investigating the identity theft, disputing the fraudulent JPMCB account and materially misleading Comenity late-payment history, and attempting to remove or correct that information.

176. Plaintiff also suffered interference with her daily activities and substantial emotional distress, including mental anguish, loss of sleep, humiliation, stress, anger, frustration, fear, worry, anxiety, embarrassment, and the continuing distress of being treated as financially irresponsible and disbelieved despite providing objective documentation establishing that she was the victim of identity theft.

177. The Credit Bureau Defendants' violations were willful because they knowingly or recklessly disregarded their statutory duties despite possessing specific, objective, and readily verifiable evidence establishing the inaccuracies; initially deleting and subsequently reinserting the disputed information; and accepting furnisher certifications that were facially irreconcilable with the evidence submitted by Plaintiff. Alternatively, the Credit Bureau Defendants acted negligently. Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT III**
**Violations of 15 U.S.C. § 1681c-2**
**(Defendants Equifax, Experian and Trans Union)**

178. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

179. Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

180. Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

181. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

182. Plaintiff repeatedly submitted ample evidence of the fact that she was an identity

theft victim. Plaintiff further supported the fact that she was an identity theft victim by providing to the Credit Bureau Defendants copies of the FTC IDT Report.

183. The Credit Bureau Defendants should have blocked the identity theft information but failed to do so at every turn.

184. As a direct and proximate result of the Credit Bureau Defendants' acts and omissions, Plaintiff suffered actual damages, including no fewer than two denials of credit; the loss of her ability to obtain and use credit on favorable terms; damage to her credit rating and reputation; diminished overall creditworthiness; out-of-pocket expenses; and the substantial expenditure of time, labor, and effort disputing and attempting to remove the fraudulent JPMCB account and correct the false and materially misleading Comenity late-payment history appearing in her consumer files and reports.

185. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

186. The Credit Bureau Defendants' conduct, actions, and inactions were willful, or at least negligent, rendering them liable for actual damages, statutory damages, and punitive damages, and attorney's fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT IV**
**Violations of 15 U.S.C. § 1681s-2(b)**
**(Defendants JPMCB and Comenity)**

187. Plaintiff incorporates by reference all the above paragraphs of this Complaint as

though fully set forth herein at length.

188. After receiving notice of Plaintiff's disputes from the Credit Bureau Defendants, Defendants JPMCB and Comenity, collectively, the "Furnisher Defendants," were required under 15 U.S.C. § 1681s-2(b)(1)(A)-(E) to investigate the disputed information; review all relevant information transmitted by the Credit Bureau Defendants; report accurate investigation results; notify every consumer reporting agency to which they had furnished information if that information was inaccurate or incomplete; and promptly modify, delete, or permanently block any information that was inaccurate, incomplete, or unverifiable.

189. The inaccuracies attributable to the Furnisher Defendants were distinct. JPMCB furnished an account, balance, charge-off status, and derogatory payment history as attributable to Plaintiff even though she had never applied for, knowingly opened, authorized, used, or benefited from that account. Comenity furnished late-payment notations on Plaintiff's legitimate Roamans account that materially misrepresented her payment conduct because her customary $85 automatic payments had been diverted to the fraudulent JPMCB account through the same identity-theft scheme that Comenity had previously acknowledged in writing.

190. In violation of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), JPMCB failed to conduct reasonable investigations and failed to review and meaningfully consider all relevant information transmitted by the Credit Bureau Defendants. JPMCB failed to reasonably determine whether Plaintiff had submitted the application, authorized the account's opening, made or approved the Amazon purchases, received the merchandise, or otherwise benefited from the account and its accompanying charges.

191. JPMCB disregarded or failed to reconcile the FTC identity-theft documentation; Plaintiff's detailed account of the impersonation and payment-diversion scheme; Comenity's

written acknowledgment of the related fraud; and Amazon's objective findings that the card ending in 3635 had been used to make concealed and unauthorized purchases through access from an unrecognized device and geographic location and that the merchandise was delivered to locations that did not match Plaintiff's residence.

192. In violation of 15 U.S.C. § 1681s-2(b)(1)(C)-(E), JPMCB reported unsupported and inaccurate investigation results to Equifax, Experian, and Trans Union; failed to notify every consumer reporting agency to which it had furnished the account that the information was inaccurate, incomplete, or unverifiable; and failed to modify, delete, or permanently block the fraudulent JPMCB account, its balance, charge-off status, and derogatory history. Instead, JPMCB continued furnishing the account as belonging to Plaintiff and requested or caused its reinsertion into Plaintiff's consumer files and reports.

193. In violation of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Comenity failed to conduct a reasonable investigation and failed to review and meaningfully consider all relevant information concerning the challenged late-payment notations. Comenity failed to determine whether those notations presented a complete and accurate account of Plaintiff's payment conduct in light of its own acknowledgment that Plaintiff had fallen victim to fraud and Plaintiff's documented explanation that her customary automatic payments had been fraudulently diverted from her legitimate Roamans account.

194. Comenity possessed information confirming that Chase had never issued or serviced Plaintiff's Roamans account and that Plaintiff had been deceived into directing the payments intended for Comenity to the fraudulent JPMCB account. Comenity nevertheless failed to identify any evidence disproving Plaintiff's explanation or establishing that the missed payments resulted from Plaintiff's unwillingness or inability to satisfy her legitimate financial

obligations.

195. In violation of 15 U.S.C. § 1681s-2(b)(1)(C)-(E), Comenity reported an unsupported and inaccurate investigation result to Experian; failed to report that the challenged late-payment history was incomplete and materially misleading; and failed to modify or delete those notations. Comenity instead verified or caused the late-payment history to be reinserted into Plaintiff's Experian consumer file and reports by approximately August 24 and August 26, 2026.

196. The information necessary to resolve Plaintiff's disputes was objective and readily verifiable. The Furnisher Defendants could compare Plaintiff's supporting documentation with their own account-opening records, authentication information, payment histories, transaction records, fraud-investigation materials, and communications with Plaintiff. Their continued verification of the disputed information despite this evidence was unreasonable and caused the fraudulent JPMCB account and materially misleading Comenity late-payment history to remain in, or reappear in, Plaintiff's consumer files and reports.

197. As a direct and proximate result of the Furnisher Defendants' violations, Plaintiff sustained no fewer than two denials of credit, including adverse credit decisions from Capital One and Wells Fargo. Plaintiff further suffered the loss of her ability to obtain and use credit on favorable terms; damage to her credit rating and reputation; diminished overall creditworthiness; out-of-pocket expenses; and the substantial expenditure of time, labor, and effort disputing and attempting to correct the information furnished by JPMCB and Comenity.

198. Plaintiff also suffered interference with her daily activities and substantial emotional distress, including mental anguish, loss of sleep, humiliation, stress, anger, frustration, fear, worry, anxiety, embarrassment, and the continuing distress of being treated as financially irresponsible and disbelieved despite providing objective documentation establishing that she was

the victim of identity theft.

199. The Furnisher Defendants' violations were willful because each knowingly or recklessly disregarded its statutory duties after receiving notice of Plaintiff's detailed disputes and the objective evidence supporting them. JPMCB continued attributing an unauthorized account and its charges to Plaintiff despite Amazon's findings and the information available within JPMCB's own records. Comenity continued attributing materially misleading late payments to Plaintiff despite its own prior acknowledgment of the fraud that caused those payments.

200. Alternatively, the Furnisher Defendants acted negligently by failing to exercise reasonable care in investigating, reviewing, verifying, correcting, and reporting the disputed information. Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, attorney's fees, and costs as permitted by 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: New York,
September 15, 2026

**CONSUMER ATTORNEYS PLLC**

*/s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

David Pinkhasov, NY # 5925904
68-29 Main Street

Flushing, NY 11367
T: (718) 701-4605
F: (718) 247-8020
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Kathleen Mary Sanginario*